# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARVIN WORST, AUDIO VISUAL PRODUCTIONS, INC., | ) )  ) |
| Plaintiffs, | ) ) |
| v. | ) No. 10 C 6538 ) |
| CITY OF CHICAGO, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' partial motions to dismiss. For the reasons stated below, the motions are granted.

## BACKGROUND

Between 1984 and October 2005, Plaintiff Marvin Worst (Worst) allegedly worked for audio-visual companies that evolved into a company known as PSAV Presentation Services (PSAV), one of the Defendants in this case. As a Director of Event Technology for PSAV, Worst allegedly serviced the audio-visual needs of hotels. One of the hotels allegedly serviced by PSAV was Chicago Hilton and Towers (Hilton). In 2005 Worst allegedly resigned from PSAV and opened Plaintiff Audio Visual Productions, Inc. (AVP). Worst contends that after opening AVP he

1

kept in touch with his former co-workers at PSAV and once or twice a year AVP would loan equipment to PSAV and AVP would borrow equipment from PSAV.

In September 2008, Mark Corso (Corso), the PSAV Director of Operations at the Hilton, who reported to Jim Skita, Director of Event Technology, allegedly called Worst and asked to borrow five plasma T.V. stands from AVP (Stands). Worst claims that he agreed to loan the Stands to PSAV and asked Corso if PSAV could loan AVP two projection screens in return (Screens). After Corso allegedly received permission from Skita, Corso allegedly advised Worst that PSAV would loan AVP the Screens. Worst allegedly provided the Stands to PSAV and on September 10, 2008, Worst allegedly went to the Hilton and picked up the Screens. Worst claims that he used the Screens for a job AVP was scheduled to perform at the Westin River North Hotel (Westin).

PSAV official Tim Walsh (Walsh), who was assigned to the Westin allegedly reported to his superiors that Worst was using what appeared to be PSAV screens. Without contacting Skita or Corso, PSAV officials allegedly initiated an investigation. Worst contends that he took the Screens from the Westin to an AVP warehouse for temporary storage until he could return them to Corso at the Hilton during normal business hours. On September 17, 2008, Defendant Kenneth Chiocchi (Chiocchi), the PSAV Regional Vice-President for the Chicago area, allegedly interrogated Skita regarding the matter and Skita allegedly told Chiocchi that he agreed to loan the Screens to AVP. On September 23, 2008, an AVP driver allegedly returned the Screens to PSAV at the Hilton.

On October 3, 2008, a private investigator hired by PSAV reported to Defendant Detective Dennis McGarry (McGarry) and Defendant Detective John Allan (Allan), detectives for Defendant City of Chicago (City), that Worst had stolen the Screens from PSAV. Worst contends that on October 10, 2007, McGarry and Allan met with Chiocchi and the Detectives knew or should have known that the Screens had already been returned by Worst. On October 15, 2008, McGarry and Allan allegedly went to Worst's home and placed him in the backseat of their squad car. McGarry and Allan allegedly asked Worst to let them search the AVP warehouse for missing PSAV equipment and allegedly indicated that if Worst did not agree, they would get a warrant and break down the door to the warehouse. Worst claims that based on a fear of the well-being of his business reputation and the safety of the equipment in AVP's warehouse, and under duress, he agreed to accompany Allan and McGarry to the AVP warehouse. Worst contends that he gave permission to Allan and McGarry to enter the warehouse, but only under duress.

Eventually, as many as five PSAV employees allegedly arrived at the AVP warehouse where Chiocchi interrogated Worst relating to alleged thefts. Plaintiffs allege that PSAV employees removed equipment from AVP warehouse and loaded equipment into PSAV trucks. Chiocchi also allegedly called business clients of AVP and told them that they should come to the AVP warehouse to determine if their equipment had been stolen. Worst was then taken to the police station and detained. Worst was allegedly charged with theft of the Screens and, at a bench trial, the judge in that case allegedly entered a directed verdict of not-guilty.

3

Worst and AVP, as Plaintiffs, include in their complaint claims for illegal search and seizure based on 42 U.S.C. § 1983 (Section 1983) (Count I), Section 1983 false arrest claims (Count II), Section 1983 malicious prosecution claims (Count III), Section 1983 excessive force claims (Count IV), a Section 1983 *Monell* claim (Count V), Section 1983 failure to intervene claims (Count VI), state law malicious prosecution claims (Count VII), state law assault and battery claims (Count VIII), state law intentional infliction of emotional distress (IIED) claims (Count IX), state law negligent infliction of emotional distress (NIED) claims (Count X), state law negligence claims (Count XI), state law tortious interference with prospective business advantage claims (Count XII), respondeat superior claims (Count XIII), and indemnification claims (Count XIV).

PSAV has filed a partial motion to dismiss Counts VIII through XI and Count XIII of the complaint. Chiocchi has filed a partial motion to dismiss Counts IX through XI, and Count XIII of the complaint. Allan and McGarry (collectively referred to as "Detectives") have filed a partial motion to dismiss Counts I-X and Counts XIII-XIV of the complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable

4

to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

**DISCUSSION**

I. Illegal Search and Seizure Claims (Count I)

Detectives move to dismiss the illegal search and seizure claims. Detectives argue that Plaintiffs allege in the complaint that Worst gave permission to Detectives to enter the AVP warehouse and that Detectives told Worst that if he did not give permission, they could get a search warrant. Detectives contend that there are no allegations in the complaint that indicate that they had seized the person of Worst when he agreed to go to the AVP warehouse. Detectives also contend that they are entitled to qualified immunity for any seizure of Worst's person and search of the AVP warehouse.

5

A. Search of Warehouse

In regard to the search of the AVP warehouse by Detectives, Plaintiffs themselves allege that Worst gave permission to Detectives to enter and search the AVP warehouse. Although Plaintiffs allege in a conclusory fashion that the permission was given under duress, Plaintiffs have not alleged allegations to plausibly suggest duress. (Compl. Par. 35). Plaintiffs argue that duress is shown by the allegation in the complaint that when Worst, while still at his home, asked to contact a lawyer, Detectives told Worst that, if he wanted to call his lawyer, he could do so at the police station and Detectives would get a search warrant and break down the door at the AVP warehouse. However, even if such statements were made by Detectives, such statements did not indicate any threat to the safety of Worst's person. Nor did such statements indicate that Detectives would harm any property in the AVP warehouse. If Worst chose to allow Detectives to search the AVP warehouse in order to avoid having them lawfully execute a search warrant, that was not a choice based on unlawful duress. Plaintiffs also argue that the tone of Detectives' voice may have resulted in duress, but there are not sufficient allegations to plausibly suggest that to be so. Plaintiffs allege that Worst, "knowing he had nothing to hide, . . .agreed to go to AVP's warehouse." (Compl. Par. 32). Such allegations, even when viewed in the light most favorable to Worst, do not suggest that Worst was forced to allow Detectives to enter the AVP warehouse under duress. Thus, there are not sufficient allegations to plausibly suggest an illegal search of the AVP warehouse.

In addition, Detectives would be entitled to qualified immunity in regard to the search of the AVP warehouse. Under the doctrine of qualified immunity, government actors are protected "from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925-26 (7th Cir. 2011). In determining whether qualified immunity bars a claim, a court must consider: "(1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.* (stating that courts have discretion to decide which prong to assess first). In this case, Detectives went with Worst to the AVP warehouse and he agreed to give them permission to enter the warehouse. There are no allegations in the complaint that would indicate that Detectives violated Worst's Fourth Amendment rights or that they should have known that they were violating any such rights.

B. Seizure of Worst

Detectives also argue that there are not sufficient allegations to indicate an unlawful seizure of the person of Worst when they went to search the AVP warehouse. Plaintiffs do not allege, for example, that Detectives physically seized Worst or intimidated Worst. Plaintiffs allege that Worst agreed to go with Detectives to the AVP warehouse relating to the investigation of some missing PSAV equipment. Although Plaintiffs allege that Worst did so under duress, such

7

allegations are conclusory and the facts alleged by Worst reflect that he voluntarily accompanied the Detectives. Plaintiffs also indicate that Worst asked the Detectives if he could put on some shoes and the Detectives told Worst to have his wife bring his shoes outside. Plaintiffs also contend that when Allan was asked by Mrs. Worst as to why her husband could not get the shoes himself, Allan "stated words to the effect that if he were allowed into the house and did not come back out, the detective would have to break down the door and shoot the family dog." However, based on Plaintiffs' own allegations, statements attributed to Allan, even when accepted as true, were merely hypothetical statements in the event Detectives obtained a warrant and eventually were in a situation to break down the door, where in the process the family dog might get hurt. Such a statement would have been a reasonable warning on the part of the Detectives and such warnings do not indicate a seizure of the person of Worst.

Plaintiffs also contend that at the AVP warehouse, Worst was handcuffed in a chair at one point and was threatened by Allan. However, the complaint indicates that at that juncture, Worst stood accused of theft by a citizen who was present at the AVP warehouse. Thus, the allegations in the complaint do not plausibly suggest an unlawful seizure of Worst's person. In addition, based on the circumstances, Detectives would be entitled to qualified immunity in regard to any seizure of Worst's person. Therefore, based on the above, Detectives' motion to dismiss the illegal search and seizure claims (Count I) is granted.

II. False Arrest Claims (Count II)

Detectives move to dismiss the false arrest claims. Detectives contend that they arrested Worst at the AVP warehouse when Chiocchi claimed that Worst had stolen PSAV property and Chiocchi signed a citizen complaint. Generally, police officers "are entitled to base an arrest on a citizen complaint, whether of a victim . . . or a nonvictim witness, without investigating the truthfulness of the complaint, unless-this turns out to be an important qualification-they have reason to believe it's fishy." *Guzell v. Hiller*, 223 F.3d 518, 519-20 (7th Cir. 2000); *see also Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003)(stating that "[t]he complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate").

The Detectives could have relied upon the representations by Chiocchi at the AVP warehouse that Worst had stolen equipment from PSAV. Although Plaintiffs allege that before the Detectives went to the AVP warehouse with Worst, Detectives "knew or should have known" that Worst had returned the Screens to PSAV, these are ambiguous and conclusory statements. In this regard, all that Plaintiffs have alleged is that the Detectives met with Chiocchi. Plaintiffs have not alleged facts to show how the Detectives knew that Worst had returned the screens to PSAV. In addition, Plaintiffs have not alleged facts to show how or why the Detectives should have known that Worst had returned the screens to PSAV. Plaintiffs have alleged facts that at the trial Chiocchi testified that he knew the two projection screens were

9

returned on September 23, 2008. There are sufficient factual allegations at the pleadings stage relating to Chiocchi's knowledge relating to the return of the Screens, but not as to the knowledge of the Detectives at the time of the arrest of Worst. Thus, Plaintiffs have not alleged sufficient facts to state a valid false arrest claim. In addition, Detectives would be entitled to qualified immunity in regard to the false arrest claims under the facts in this case. Therefore, Detectives' motion to dismiss the false arrest claims (Count II) is granted.

III. Section 1983 Malicious Prosecution Claims (Count III)

Detectives argue that there is no cognizable Section 1983 malicious prosecution claims since Illinois law provides such a claim to Worst. The Seventh Circuit has not recognized a Section 1983 malicious prosecution claim in Illinois and Worst has not shown that this court should recognize such a claim in this case. *See Newsome v. McCabe,* 256 F.3d 747, 751 (7th Cir. 2001)(indicating that there is no "constitutional tort of malicious prosecution when state courts are open"); *see also Wallace v. Kato,* 549 U.S. 384, 390 n.2 (2007)(indicating that the Court has not "explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983"); *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011)(stating that individuals can "bring Section 1983 malicious prosecution suits when the relevant state's law does not provide them with a way to pursue such claims," but that "Illinois law recognizes tort claims for malicious prosecution"); *Terry v. Hodapp*, 2011 WL 382816, at *2 (N.D. Ill. 2011). Therefore, Detectives' motion to dismiss

the Section 1983 malicious prosecution claims (Count III) is granted.

IV.  Section 1983 Excessive Force Claims (Count IV)

Detectives argue that Plaintiffs have not presented sufficient allegations to support a Section 1983 excessive force claim.  To determine whether an officer used excessive force, a court must decide "whether the officer[']s action" was "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In the instant action, the only physical force allegedly used upon Worst by Detectives was that Allan allegedly "took hold of [Worst] and forcibly threw him in a chair, and handcuffed him to the chair." (Compl. Par. 37). Although Worst need not show a physical injury for an excessive force claim, it is worth noting that he does not allege that any physical injury occurred.  In fact, in regard to the assault and battery claims, Plaintiffs allege only that there was "unjustified and offensive physical contact" and there was an "apprehension of immediate bodily harm." (Comp. Par. 109-111).  Nor does Worst allege any facts that plausibly suggest the physical placement of Worst in the chair would have been of such force that it could support a valid excessive force claim.

In their briefs, Plaintiffs contend that Worst was handcuffed to the chair for hours, but Worst has not shown any particular hardship from such a situation that could support an excessive force claim and, based on the circumstances alleged in

11

the complaint such a restriction on the movement of Worst was not unreasonable. Thus, Plaintiffs have failed to state a valid Section 1983 excessive force claim.

In addition, even if this court found that there were sufficient allegations of excessive force, Detectives would be entitled to qualified immunity on the excessive force claims. The facts alleged by Plaintiffs reflect that in the warehouse there was a confrontation between Chiocchi and Worst involving shouting and swearing that could have resulted in physical violence. It was then, according to Plaintiffs, that Allan allegedly threw Worst into a chair and handcuffed him. (Compl. Par. 36). A reasonable officer dealing with an accused thief while some of the complaining victims are present and engaging in a heated confrontation with the accused could have reasonably believed it necessary to forcibly place the accused in a chair and handcuff him to take control of the situation. Therefore, Detectives' motion to dismiss the Section 1983 excessive force claim (Count IV) is granted.

V. Section 1983 Failure to Intervene Claims (Count VI)

Detectives argue that Plaintiffs have failed to allege sufficient facts to state a valid Section 1983 failure to intervene claim. For a Section 1983 failure to intervene claim, a plaintiff must show that "[a]n officer who [w]as present and fail[ed] to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens . . . had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation

has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *see also Lewis v. Downey,* 581 F.3d 467, 472 (7th Cir. 2009)(stating that "[e]ven as a bystander, [an officer] can be held liable under § 1983 if [the plaintff] can show that [the officer] (1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring"). In the instant action, there are no alleged constitutional violations for which either Allan and McGarry plausibly could have intervened based on the facts alleged in the complaint. As indicated above, in regard to the alleged excessive force, Plaintiffs have failed to state a valid excessive force claim. Therefore, the motion to dismiss the failure to intervene claims (Count VI) is granted.

VI. *Monell* Claim (Count V)

The City argues that Plaintiffs have not presented sufficient allegations to state a valid *Monell* claim. A local governmental entity can only be held liable for an unconstitutional act "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). Since Plaintiffs have not stated a valid

individual Section 1983 claim and have not pled any valid underlying constitutional violations, the *Monell* claim fails as well. *See Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010)(stating that "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee"). Therefore, the motion to dismiss the *Monell* claim is granted.

VII. Remaining State Law Claims

Having resolved the federal claims in this case, the court must determine whether to continue to exercise supplemental jurisdiction over the remaining state law claims, including the counterclaim and third-party claims. Plaintiffs do not present facts that would suggest that this court has diversity subject matter jurisdiction in this case. Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). The Seventh Circuit has indicated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction. . . ." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, In exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual,

and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Such claims are therefore dismissed without prejudice.

## CONCLUSION

Based on the foregoing analysis, all federal claims brought against Detectives, the City Police Department, and the City are dismissed. The court also dismisses the remaining state law claims, including the counterclaim and third-party claims, without prejudice.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 2, 2011

15